JEMMA E. DUNN
Nevada Bar No. 16229
MATTHEW T. HALE
Nevada Bar No. 16880
JOHN M. ORR
Nevada Bar No. 14251
**GREENBERG GROSS LLP**
1980 Festival Plaza Drive, Suite 730
Las Vegas, Nevada 89135
Telephone: (702) 777-0888
Facsimile: (702) 777-0801
*JDunn@GGTrialLaw.com*
*MHale@GGTrialLaw.com*
*JOrr@GGTrialLaw.com*

*Attorneys for Plaintiff*
*Gylma Curiel-Rosas*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GYLMA CURIEL-ROSAS, individually and on behalf of others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>789123, INC., dba ESTIATORIO MILOS, a foreign corporation<br><br>Defendant. | Case No.:<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**(1) Violation of the Fair Labor Standards Act — Failure to Pay Overtime (29 U.S.C. § 207)** |

Plaintiff Gylma Curiel-Rosas, individually and on behalf of others similarly situated, alleges against Defendant 789123, Inc. doing business as Estiatorio Milos ("Defendant" or "Milos") as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), as those claims arise under the Fair Labor Standards Act ("FLSA"), a federal statute.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant operates within the District of Nevada and a substantial part of the events giving rise to this action occurred within this district.

**PARTIES**

3. Plaintiff Gylma Curiel-Rosas ("Plaintiff" or "Ms. Curiel-Rosas") is an individual who resides in Clark County, Nevada.

4. Defendant is a corporation organized and existing under the laws of the country of Canada and operates a restaurant located within the District of Nevada.

5. Defendant is an employer as defined by 29 U.S.C. § 203(d).

**FACTUAL ALLEGATIONS**

6. Defendant owns and operates Estiatorio Milos, a full-service restaurant located within the Venetian Hotel and Casino in Las Vegas, Nevada.

7. Defendant employs, and at all relevant times has employed, individuals in the position of "Floor Manager" to assist in restaurant operations.

8. Defendant scheduled between two (2) and four (4) Floor Managers to work during the "Lunch" and "Dinner" shifts each day.

9. As a matter of uniform policy and practice, Defendant classified all Floor Managers without exception as exempt from the overtime requirements of the FLSA.

10. Ms. Curiel-Rosas was employed by Defendant as a Floor Manager from on or around January 6, 2025, through December 28, 2025.

11. During her employment, Ms. Curiel-Rosas was misclassified as exempt from the

overtime provisions of the FLSA and was denied overtime compensation.

12. Ms. Curiel-Rosas worked with at least two other individuals during her employment with Defendant that held the title of Floor Manager.

13. Ms. Curiel-Rosas and the other Floor Managers worked under the supervision and direction of Milos' General Manager ("GM") and Assistant General Manager ("AGM").

14. Ms. Curiel-Rosas and the other Floor Managers with whom she worked had primary duties that were operational and non-managerial in nature.

15. The substantial majority of Ms. Curiel-Rosas' and other Floor Managers' duties, as assigned by Milos GM and AGM, included performing manual tasks to assist non-exempt staff members, including: assisting servers bring drinks and food to guests; assisting runners and bussers clear tables; acting as the restaurant hostess and/or bartender as needed; responding to guest complaints; and setting up tables and chairs each day to prepare for large groups and to prepare for banquets and other events.

16. Ms. Curiel-Rosas and other Floor Managers did not have the authority to hire, fire, schedule, discipline, or terminate employees.

17. Ms. Curiel-Rosas and other Floor Managers were not asked to provide input on issues related to hiring, firing, employee discipline, promotion, or any other changes in status of any employees.

18. Throughout her employment, Ms. Curiel-Rosas was paid an annual salary of $80,000, which Defendant reflected on her paystubs as an hourly rate of $38.46.

19. Ms. Curiel-Rosas regularly worked in excess of forty (40) hours per workweek, but Defendant never compensated her at the applicable overtime rate for any hours worked beyond forty (40) in a workweek.

20. Ms. Curiel-Rosas is personally aware of at least two other Floor Managers who were paid annual salaries of approximately $70,000, and $75,000, respectively. These Floor Managers were subject to the same exemption classification and, like Ms. Curiel-Rosas, were not compensated at the applicable overtime rate for hours worked in excess of forty (40) per workweek.

21. All Floor Managers employed by Defendant are similarly situated to Ms. Curiel-

Rosas because they worked the same hours under the same scheduling practices, were subject to the same exemption classification, and were likewise not compensated at the overtime rate for hours worked in excess of forty (40) hours per workweek.

22. At all relevant times, Milos' regular business hours were approximately 11:30 a.m. to 11:00 p.m., Sunday through Thursday, and 11:30 a.m. to 11:30 p.m. on Fridays and Saturdays.

23. Milos regularly permitted guests to be seated shortly before the restaurant's stated closing time. As a result, the restaurant frequently continued serving guests well after 11:00 p.m. or 11:30 p.m., often extending dinner service past midnight.

24. After the restaurant ceased serving customers each evening, Floor Managers were required to complete mandatory closing duties and reports assigned by Milos' GM and AGM. These closing tasks routinely required Floor Managers to remain on the premises until at least midnight and often later.

25. Ms. Curiel-Rosas was routinely scheduled to begin her shifts at 3:00 p.m. On each scheduled shift, she was expected to remain on duty through the close of business and complete the required post-closing duties. As a result, Ms. Curiel-Rosas regularly worked shifts lasting nine (9) hours or more per day, frequently extending past midnight.

26. For example, during the workweek of September 1–7, 2025, Ms. Curiel-Rosas was scheduled to work five (5) shifts, each beginning at 3:00 p.m. Given Milos' closing time of 11:00 p.m. or 11:30 p.m., and the additional time required to complete mandatory closing duties after the restaurant closed, Ms. Curiel-Rosas worked in excess of forty (40) hours in each of these workweeks. Despite this, Defendant failed to pay Ms. Curiel-Rosas any overtime wages for the hours she worked beyond forty (40) in those workweeks.

27. All Collective Members similarly worked in excess of forty (40) hours per workweek without receiving overtime compensation, pursuant to Defendant's uniform policy of classifying all Floor Managers as exempt.

28. Defendant's misclassification of all Floor Managers as exempt was willful.

29. Defendant knew, or showed reckless disregard for whether, its classification of Floor Managers as exempt violated the FLSA.

30. Defendant was aware of the overtime requirements imposed by federal law and the criteria governing the applicability of the executive and other exemptions, yet it applied an across-the-board exemption classification to all Floor Managers without conducting any individualized or good faith analysis of whether each Floor Manager's actual primary duties satisfied the requirements of any applicable exemption.

31. Defendant's decision to classify all Floor Managers as exempt was a deliberate business decision made to reduce labor costs at the expense of its employees' right to overtime compensation.

32. Because Defendant classified Floor Managers, including Ms. Curiel-Rosas, as exempt salaried employees, Defendant did not track or record the total number of hours Floor Managers worked each workweek.

33. Defendant's failure to maintain accurate time records for Floor Managers was the direct result of its unlawful exempt classification and its uniform policy of not compensating Floor Managers on an hourly basis for all hours actually worked.

34. Defendant failed to pay Floor Managers for all overtime hours worked, and failed to pay any overtime premium on those unrecorded hours in violation of 29 U.S.C. §§ 206 and 207.

## COLLECTIVE ACTION ALLEGATIONS

35. Ms. Curiel-Rosas brings this action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all other persons similarly situated — specifically, all current and former Floor Managers employed by Defendant at any time during the applicable limitations period who were: (a) misclassified as exempt from overtime and were not paid overtime compensation for hours worked in excess of forty (40) hours per workweek; and/or (b) not compensated for all hours suffered or permitted to work, including compensable time worked outside of scheduled shifts for which no wages were paid (the "Collective Members").

36. Ms. Curiel-Rosas has consented in writing to join this collective action pursuant to 29 U.S.C. § 216(b). Her signed consent form is attached hereto as Exhibit A.

37. Ms. Curiel-Rosas and the Collective Members are similarly situated because Defendant applied a uniform policy and practice of classifying all Floor Managers as exempt from

federal overtime requirements, without individualized analysis of any Floor Manager's actual job duties, and failed to track, record, or compensate all hours Floor Managers were suffered or permitted to work, resulting in the systematic denial of overtime wages for all compensable hours worked by Collective Members.

38. Accordingly, Ms. Curiel-Rosas and the Collective Members' collective action claims derive from a single course of conduct by Defendant. The objective facts are essentially the same for Ms. Curiel-Rosas and the Collective Members. Within each claim for relief, the same legal standards under federal law govern.

39. Collective treatment of Ms. Curiel-Rosas and the Collective Members' claims are proper because members of the Collective are "similarly situated" within the meaning of 29 U.S.C. § 216(b) as a factual nexus exists between the manner in which Defendant deprived Plaintiff of overtime compensation under the FLSA and the manner in which Defendant's conduct also deprived the other members of the Collective of overtime compensation under the FLSA.

## FIRST CLAIM FOR RELIEF

**Violation of the Fair Labor Standards Act — Failure to Pay Overtime (29 U.S.C § 207)**

**(Plaintiff Individually and on behalf of Collective Members)**

40. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

41. The FLSA requires that covered employers compensate non-exempt employees at a rate of not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207(a)(1).

42. At all relevant times, Plaintiff and the Collective Members were employees within the meaning of the FLSA and were not exempt from its overtime provisions.

43. Defendant violated the FLSA by failing to pay Plaintiff and all Collective Members overtime wages for all hours worked in excess of forty (40) per workweek, pursuant to its uniform policy and practice of misclassifying all Floor Managers as exempt.

44. Defendant's violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a), in that Defendant knew or showed reckless disregard for whether its conduct violated the

FLSA.

45. Defendant's willful violations entitle Plaintiff and the Collective Members to a three-year statute of limitations and to recover liquidated damages pursuant to 29 U.S.C. § 216(b).

46. As a direct and proximate result of Defendant's conduct, Plaintiff and the Collective Members have suffered damages in the form of unpaid overtime wages for the three-year period preceding the filing of this Complaint, plus interest thereon.

47. As a result of Defendant’s willful and purposeful violation of the FLSA, there have become due and owing to Plaintiff and the other members of the Collective an amount that has not yet been precisely determined.

48. The employment and work records for Plaintiff and the other members of the Collective are in the exclusive possession, custody and control of Defendant and Plaintiff and the other members of the Collective are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and the regulations of the United States Department of Labor, to maintain and preserve payroll and other employment records with respect to Plaintiff and the other members of the Collective from which the amount of Defendant’s liability can be ascertained.

49. Plaintiff and the Collective Members also are entitled to recover their reasonable attorneys' fees and costs incurred in connection with this action pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Declaring this action to be an FLSA collective action properly maintained under 29 U.S.C. § 216(b);

2. Entering an order requiring Defendant to provide Plaintiff with the names, contact information, work schedules, and compensation received for all members of the Collective who worked for Defendant during the Collective Action Period;

3. Entering an order directing that notice and opportunity to opt-in be given to all members of the Collective who worked for Defendant during the Collective Action Period;

4. Declaring that Defendant has willfully, unreasonably, wrongfully, and without

good faith, violated its statutory and legal obligations, and deprived Plaintiff and Collective Members of rights, protections and entitlements under federal law, as alleged in this Complaint;

5. Ordering a complete and accurate accounting of all the unpaid compensation to which each member of the Collective is entitled;

6. Entering judgment against Defendant and award each Plaintiff monetary damages in the form of back pay compensation, liquidated damages equal to his/her unpaid compensation, plus pre-judgment and post-judgment interest;

7. Award Plaintiff and the other members of the Collective their reasonable attorneys' fees, as well as costs and disbursement of this action; and

8. Award Plaintiff and the other members of the Collective such other further relief as the Court deems necessary and proper.

DATED: June 11, 2026

GREENBERG GROSS LLP

By: */s/ John M. Orr*
Jemma E. Dunn
Matthew T. Hale
John M. Orr

Attorneys for Plaintiff Gylma Curiel-Rosas

**DEMAND FOR JURY TRIAL**

Plaintiff Gylma Curiel-Rosas hereby demands a jury trial.

DATED: June 11, 2026

GREENBERG GROSS LLP

By: */s/ John M. Orr*
Jemma E. Dunn
Matthew T. Hale
John M. Orr

Attorneys for Plaintiff
Gylma Curiel-Rosas